May it please the court, if Graham and KSR apply, and I don't believe they do, we have met the burden of establishing the ordinary skill in the art through Mr. Weisenbaker's established explicitly his rationale for adding a drive shaft to a hay rake. Mr. Weisenbaker is a hay farmer and has been for some time. He's familiar with tractors, hay rakes, balers, all of the elements of the 354 patent. There are six at hand here. There's a front hitch, a rear hitch, wheels, a frame, a hay rake, and a drive shaft. All of those are familiar within that very narrow art of hay farming. So you're raising issues of anticipation and obviousness. I'm sorry, sir? You're raising issues of anticipation and obviousness. Obviousness is all I'm here to talk about today, your honor, unless you have questions on it. I think there are a number of interesting questions. Your point is that the prior art was awfully close. I'm sorry, sir? The prior art was awfully close. Well, the prior art was narrowly contained and very close. The prior art is hay rakes in general, which have everything except a drive shaft. You can order hay rakes with hitch, Mr. Weisenbaker testified. So the only thing to add with a very commonly used hay rake was a drive shaft. Once the Lewis patent established that you could put a drive shaft back there, Weisenbaker's testimony was very direct. He says at A1509, I just took a mere rake and cut a hole in the tongue. Okay, but counsel, I think the problem with Weisenbaker, is that the only thing that you have to rely on for Weisenbaker is that he says he did it. Yes. What he doesn't say is it would be obvious to one of ordinary skill in the art. Now you described Mr. Weisenbaker as a hay farmer, but perhaps he's the most brilliant hay farmer ever to farm hay. I don't know that he is telling me that because he says he could do it doesn't mean one of ordinary skill in the art could do it. Just like because the patentee could do it doesn't mean one of ordinary skill in the art could necessarily do it. That's the problem. I mean, I hate to mince words. I'm not looking to rake you over the coals. Well, actually it was. Are you going to bail him out? Right. But anyway, I'm not trying to make light of this. It's an important case. And what I'm trying to focus on, though, is Mr. Weisenbaker and exactly what his testimony might convey to someone. Well, I think he said he did it. And I think the clear implication, if not the explicit statements, or it would be obvious to anybody else that had some skill at farming and had a shop in his backyard. He just did it. It was intuitive. It's so inherent in here. The judge didn't need expert testimony to explain hay rakes and tractors in the claims construction hearing. This is so like this. You know, you pull little tractors and trailers around. But the district court must not have agreed with you. That's why you're here. I mean, you said he understands it. Everybody knew it. It should have been so. Well, I think, Your Honor, I think the error has been over. Graham and KSR are very useful for establishing a framework for balancing hindsight and unwarranted monopolies. Well, sir, the district court judge's opinion at page 14 of his opinion, which is at A-26 in the back of the blue brief, down the 106-103 issue, says Scott also failed to present evidence regarding the level of skill, ordinary skill, in the art at the time of the invention. Now, if he's right that there's a failure to present that evidence, then a key element of the 103 case hasn't been satisfied. They then go on to say Scott's sole witness, Wisenbaker, whom Scott contends is a person of ordinary skill. And when they say you contended that, but then he said right above you failed to present any evidence means he's rejected Wisenbaker as a person of ordinary skill. He said Wisenberger didn't testify as to how the elements of the And if I assume that the judge knew what he was talking about, that he was correct, then it seemed to me that your 103 case falls down. You see what I mean? I understand the argument. So I guess what you have to do is to convince us that Judge Yackel just plain got it wrong, that you indeed did present evidence of what the level of skill in the art was, and you'd point to the record and show us where you did that, and then you'd point to us if Wisenbaker was your sole witness on 103, which I believe he was, where he actually testified and why his testimony builds up a prima facie case. See, I didn't see that in your brief. His testimony, and I believe it's fairly well documented in the brief, Your Honor, was that in 1982, he talked about it. May I have it? We got it right here in the little book. Nothing like having it in the book. See, I'll be candid with you. My problem with your appeal was I couldn't, as I read your brief and your reply brief, I didn't see you presenting me with record evidence that proves that Judge Yackel didn't know what he was talking about in those two sentences I just read to you a moment ago. Well, I think, Your Honor, and I will look during my reply time at the specific sites, but I think, Your Honor, that the problem here is that I think the judge too literally applied KSR. Those cases exist to establish a balance between hindsight and unwarranted monopoly. And in proving that, in trying to establish that, the court wrestles with expert testimony trying to reconstruct what somebody might do. And so we have this unusual case where we bring somebody in that actually built one at the same time, after seeing the Lewis device, the same motivation. Maybe it's a little bit like the case you just heard before, which was not dotting the I's and crossing the T's, where they ought to be dotted and crossed. But a 103 case starts with a proposition that's the person who's attacking the patent comes in and says, here's the relevant level of skill in the art. Sometimes you have a fight about that. And that gets nailed down because then the judge knows through whose eyes he's looking at everything. And so when Judge Yackel said to me, in his opinion, that Scott didn't put any evidence on as to what the level of skill in the art was, I said, whoops, the arrow went right through the heart of Scott's case. I understand that argument technically, Your Honor. If we take a step back and look at the fourth ram factor of secondary considerations, why would that matter in a case where there's somebody that actually built one that came to trial and testified? Why would secondary, but the fact that Weisenbaker didn't because it might have been built by someone of extraordinary skill in the art. It might have been built by somebody who was so far into the rocket science, and that those ordinary skill, they wouldn't have understood to do it. And that's, that's why all 103 keys off of the ordinary artisan. Now, I'll grant you that there are a whole mess of these devices, from Kansas, lying around out in the fields, right? I've seen them. Yes. And there's a whole lot of priority. There's no question about that. But it's like the case on 102, which you're not arguing here today, the rules, Woodland Trust, the rules are strict. If you're going to have an interested party testifying, there's got to be corroboration, got to be sometimes two levels of corroboration. Mr. Yeager, if we don't agree with you on the merits of obviousness, what about the grant of the injunction? Why wasn't that reasonable, when there was evidence that the accused infringer would continue to infringe? The one reason, the primary reason on that is, your honor, what is what does eBay mean by public interest? I mean, clearly, they're farmers out there burning more gas and spending more time and emitting more carbon dioxide than without these devices out there. And clearly, there's a resistance on the part of the plans to provide lower cost devices. But a patent is a right to exclude. And it doesn't have in the statute, all sorts of exceptions concerning global warming. No, but it does have a public interest. And I think, you know, patents, you know, protect and patents are special. eBay said patents need to be all the same. You're not a direct competitor, are you? Not according to, no. And you're not in the same market, right? That's correct. So if you continue to infringe, you'd pay a royal. It's hard to see irreparable harm. It's hard to see why monetary damages aren't sufficient. Yes, I don't think. I would have thought your argument would be that even though your client candidly confessed that he's going to, unless enjoined, he's going to continue to infringe. Right. But continuing to infringe could result in an additional royalty, right? Yes. But your point is that you're not competing. You're not taking sales away from. No. And I think the judge acknowledged that. But the question here is, lifting the injunction really doesn't help when you're talking about something that's price sensitive. We also have to address a reasonable royalty issue if we get to have any practical ability to serve that customer. Now, how would reasonable royalty be projected into the future? Market estimates and reduction to present value, or certainly a winning patentee doesn't have to sue every six years to deal with this in the future. Yeah, reasonable royalty. Continuing to infringe if no injunction is passed. Isn't that something like a compulsory license under certain circumstances? I think it still needs to be low to serve. And I think the facts establish a support for a low royalty in this case. Are you saying the license level as presently set, if it were keyed into a compulsory license, would be effectively an injunction because your client can't make any money at that rate? I would argue, yes, Your Honor, I think there's evidence to support that. And it is price sensitive. Several witnesses have testified to that. And they'll just not do it if it's too expensive. You've got to, you know, the device now sells for $5,500. It's got to come in something close to that. We don't know what the upper threshold is. But what about the established licensing? Isn't there 25% is the established licensing? On litigation? But the thing about the reasonable royalty is arms-length negotiation. And you've got to take into account there are a lot of devices out there. Maybe we didn't prove it. If this case falls short, there's still a heck of a lot of devices. This patent is at risk, ultimately, if they don't come to some type of agreement. No cases have been filed since 2004 after Wisenbaker presented the... I thought your point was nobody can afford the article made to the patent. I think that's... It's a Rolls-Royce on the prerogative. It is. And they've proven that in 10 years. It's a very good device. It's overly priced for most people. Would you like to reserve the rest of your time? Let me look at the particular issues on August 6th. Mr. Bullock, is it? Thank you, Your Honor. The court is correct to note that there was zero evidence presented about what a person of ordinary skill in the art is. It wasn't zero evidence. They're saying Wisenbaker is a person of ordinary skill in the art, and he's saying he was able to do it with no difficulty. They never told the court or presented evidence that he was a person of ordinary skill. They just said that here's a third-party witness who was sued for infringement, who testified that  same time of the filing of the patent. You know, we see a million cases on appeal involving obviousness, and really, I would say it's less than half of them where the court actually makes a finding and or articulates for anyone the exact level of skill in the art. I'm not saying that it isn't important that people present evidence on it, but in a case like this, with the technology being what it is, couldn't the district court figure it out based on the prior art references that were disclosed, based on the enormous number of witnesses that they brought forward in conjunction with their anticipation case? I mean, do they have to actually stand up and explicitly argue to the court what the level of skill is, or isn't it enough when they present so many different people talking about this and that are actually, you know, people using the device? Why isn't that enough? Because the standard to overturn the district court's order here is clearly erroneous, standard. They didn't present any evidence of what a person of ordinary skill in the art is. They failed to address the claims of the patent itself. They had witnesses that came in and said, the patent's invalid in view of uncorroborated testimony that, hey, I saw a rake a couple of years ago, and it was rusty. Therefore, it must be old and predate the patent. There was no evidence of actually any prior art under 102. No evidence in the record whatsoever of any 102 art other than a patent that was cited during the examination. I have to tell you, we have these rules about not permitting uncorroborated testimony because people are interested. I got to tell you, I give kudos to these witnesses in that they didn't come in and say, I know it was two years old. They said it was rusty. It seems like these are very honest people who were testifying. I don't get to make the assessment on credibility in the first instance, but they certainly seem to be honest because they could have manipulated their testimony to doom your patent, but instead they chose to be extremely honest. Correct. Your Honor, I'm not attacking their honesty. Even if they were completely honest, the rules... They're saying they're not corroborated. They're not corroborated, and under the clearly erroneous standard, this Federal Circuit has of a witness can virtually never be challenged under the standard of clear error. So this court really can't assess the district court's determination of that credibility of these witnesses. Does it have to be corroborated every time? There has to be something to corroborate this evidence. I can't just come in here and say, oh, every patent out there is invalid because I saw something 20 years ago. What about the fact that they had umpteen people who each think they saw something like this? I mean, it's not the same thing, obviously, but why doesn't that sort of act as corroboration where there's so many different individuals pointing to it? Well, Your Honor, there was three witnesses that testified, and all three of those had been third-party witnesses other than Mr. Scott. All three of them had previously been sued. One had been dismissed for improper venue. The other two didn't bring up any of these defenses of invalidity. They took a license instead. And then they came forward and said, yes, we took pictures of rakes after this lawsuit had been filed in 04. They took pictures in 04, 05, 06, came to trial and said, I think these are old because they're rusty rakes. There was no evidence of any 102 reference out there whatsoever. Nothing presented it to the court. So how long does it take to get a rake rusty down there? We'd have to have an expert to testify about that, and they failed to do that. You don't have, your kid doesn't have a bike? You can't? Not on the record. And as far as the... What about this preliminary injunction, though? Because it seems to me if a preliminary injunction would be granted anytime there's the belief the person's going to keep doing it, then it kind of undermines the notion of eBay. eBay sort of looked to the four factors, and one of the factors isn't, is the person likely to keep doing it? Right. So it seems that that hangs on a kind of a faulty... Is this a preliminary injunction? I'm sorry, permanent. I was misspeaking. How is a patentee hurt? Let's just assume for purposes of argument, I'm infringing the claims of your client patent. I'm going to infringe them, but you know what? I'm going to infringe you up in Alaska, and you've never sold in Alaska, you have no desire to sell in Alaska, you're never going to Alaska. So there's no possibility I'm going to take a sale away from you up in Alaska, right? And I say there's some public interest factors as to why I ought to be selling my product up in Alaska. There's less air pollution, there's less of this, less of that, all the good green things we want. And I'm perfectly willing to pay you a reasonable royalty for my sales up in Alaska. Now, why would a district court enter an injunction prohibiting me from selling my product up in Alaska? I mean, up for an injunction. In those circumstances, there is no direct competition between the parties if the patentee was not selling in Alaska. And there might be justification for not granting the injunction, but that's not the case here. These guys compete in the state of Texas and surrounding areas. He makes a cheap... Well, what happens if, what happens if, up in Alaska, okay, it's recurrent dealers, okay? And I got myself a, oh, I don't know, a used Toyota dealership, right? And you are selling Rolls Royces in Alaska. So we're both selling in Alaska, but we do not compete, right? And, but there's some aspect of my, of my business that infringes one of your claims, right? So why shouldn't I pay you a royalty instead of being enjoined from being able to sell these nice used cars up in Alaska? Well, in this case, the appellant has not agreed to pay any royalty. He said that he'd only pay one, I mean, two to three percent of his gross profit of the sale of the kit. And you know what his gross profit is? Zero. He sold 136 of these at the time of trial. His testimony is he is still losing money. Every time he sells one, he loses money. This court should uphold the injunction because you're preventing him from losing more money. Every time he sells one, he goes into the hole further and further. He testified that he can't satisfy any judgment. He has no assets to pay the damages that were awarded. And that he earlier testified that even if the district court enjoined him, he wasn't going to abide by it. The court sort of twisted his arm and made him comply. Your lawsuit against your adversary there was an act of grace? It was not, your honor, but it would have taken away sales. And it's not comparing a used Toyota versus a Rolls Royce. Our product sells for about $25,000 and his is $16,000 to $18,000. It's not that much. Counsel, it's your argument that there would be irreparable injury here, irreparable That's one of the points I'm making, your honor, is that he can't satisfy judgment. He can't pay a royalty. He refuses to pay a royalty that was awarded by the court by his own testimony. And therefore, the only relief my clients have is the injunction. In fact, we actually have a motion for contempt hearing on August 6th in front of the same district court because the appellant has not abided by the injunction. He's not posted bond or asked for leave from the injunction. Issue of damages. The court awarded 12.5% royalty based on, I think Judge Moore, you alluded to the previous licenses. We had six licenses of $4,500 a rake. The court said that sort of blended what the price of the rakes versus the kit, but the appellant isn't selling a kit only. His actual sales, at the time of trial, he had sold 75 rakes. He's a dealer for these rakes, so he buys them by the dozen and gets them cheap and then adds his modifications and then marks them up and sells them for over $16,000. So he sold 75 modified rakes and only 61 kits. The kits sell for about $6,500 a piece that somebody already owns a rake and they can buy the kit. And the court sort of blended those two, the price, and came up with the damages based on the average of $16,000 versus $5,500 for the kit being $10,750, multiply that by $130 to come up with the damages in this case. When there was actually evidence, there was a stipulation in the pre-trial order that they'd sold 136, 75 rakes, and 61 kits. One last thing I'd like to bring up is with respect to the anticipation and the obvious, they never addressed the claims in this patent. They stipulated that they infringed all the claims in this patent. And the only evidence they presented was the patent was anticipated or obvious. They never compared, not just the person of ordinary skill, they never assessed the prior art and the difference between the claims and the prior art. They never went through the elements and said, does this prior art reference teach a frame? Does this prior art teach a rake arm? Does it teach a rear wheel assembly? They never got to that inquiry. All they did is said... The district court mentioned in his opinion that, in his judgment, the prior art actually taught away from the combination? That's correct. What was that all about? How so did prior... Give me an example of prior art that was teaching away from the combination. The only 102 reference that was before the court was the Lewis rake. It was a Lewis patent, actually. It wasn't an actual physical device that was cited during the prosecution of the 354 patent. The Lewis patent taught getting a baler, attaching rake arms to the corners of the sides of the baler, attaching a frame to the baler to connect it to the tractor, and you have what they call a power takeoff, which is just a torque providing rotating head that you connect a shaft to to provide that torque necessary to run the baler because the baler is going to have power to run the belts inside. So that prior art existed. There was prior art also during the prosecution that was cited where people would attach rake arms to the sides of the front of the rake, I mean, of the tractor itself. The purpose of these rakes is once you cut the hay, you sort of want to make a windrow where you rake it into a small line so that it'll get sucked up by the baler to make a windrow. So there was prior art that taught different types of rake arms mounted to the tractor or the baler itself. Well, there was testimony in the trial that you can't just attach these big 20-30 foot long rake arms to a baler because the wheels won't support it, the framework of the baler isn't made to carry any type of load. So what the inventors of the 354 patent did is a hay rake device, beefed it up, put a secondary frame and a extension PTO shaft so that not just to rake and bale at the same time, but you can use that rake for different purposes. You don't have to tow a baler behind it if you don't want to, only if you're going to do that combined operation. They could tow a teeter weight to sort of fluff and dry out the hay before you rake it, and there's no reason to expend the extra fuel to pull a baler around unless you're going to be baling and raking at the same time. So it provided an invention that allowed multiple uses that were more efficient. That's all I have, your honor. Thank you. Thank you, Mr. Bullock. Mr. Yeager has little time for rebuttal. Very quickly, your honor. Just very quickly on rebuttal itself, the offer was 2 to 3 percent of the gross sales price. That's a misunderstanding. That was clarified, I believe, in the record. The Lewis device is constructed by taking the hitch off of the baler and taking the rake off of wheels, so putting wheels and hitch back on don't seem like a great advance in the art, and I think that argument is pretty well documented in the brief. The other way to get about it is to simply add a drive shaft to an existing hay rake, and that's what Wiesenbaker did, and that's what all the other businesses showed. There's nothing else to like. The world isn't rushing out to copy the plaintiff's device. They're building much simpler devices that just have a drive shaft on existing rakes. Either of those devices came after Lewis, in which case they kind of support the obviousness, unless everybody copied Wiesenbaker, or they were before or contemporaneously. I mean, where did they come from? Where did all these devices come from if this isn't an obvious thing to do? I mean, Wiesenbaker wasn't in the business of selling these things. At the end of the day, and I have looked for references, your honor, I think I'll have to just stand on the record as it's, you know, as it's submitted. I think that at the end of the day, the difference between this case and the other cases, the other case involves federal rules of civil procedure, which have to be very, very rigid. This case, the consideration of 103 is by its nature an equitable balance between a monopoly and hindsight, and there are enough facts in this case that this court can make that judgment, just as the Graham factors and the KSR. Granted, advocacy is unusually bad, and the reasons for that, I think, are the plaintiff's financial situation. And, you know, this is the first and last time I'm going to be here, or hopefully in the trial court, but I think as bad as it was, your honor, I mean, I think it's sufficient that you can make an equitable balance here, just from the sheer number of the devices, the sheer number of witnesses, the nature of the devices, the geographical coincidence, all of these factors, it's sufficient to say Arnold Wiesenbaker was a hay farmer. That's all we needed to do. I mean, it should have been better. The reason why I raised the reference to the other case, pointing out to the fact that there are some rules and regulations that guide how these cases are tried and how the records are made, and part of our job on appeal is to police those rules. And there are some cases in which the court can wink, if you would, at a deviation from a rule or a procedure, but if they wink all the time, your precedent begins to look awfully sloppy. Winking at a case where you have an actual inventor come to court, your honor, I hope is warranted. Thank you. Thank you, Mr. Hager. We'll take the case on review.